## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HANNAH MASON, | ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| | ) **COMPLAINT FOR** |
| v. | ) **VIOLATIONS OF THE** |
| | ) **FEDERAL SECURITIES LAWS** |
| TAUBMAN CENTERS, INC., | ) |
| MAYREE C. CLARK, MICHAEL J. | ) **JURY TRIAL DEMANDED** |
| EMBLER, JANICE L. FIELDS, | ) |
| MICHELLE J. GOLDBERG, NANCY | ) |
| KILLEFER, CIA BUCKLEY | ) |
| MARAKOVITS, ROBERT S. | ) |
| TAUBMAN, RONALD W. TYSOE, | ) |
| and MYRON E. ULLMAN, III, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Hannah Mason ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

### NATURE AND SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Taubman Centers, Inc. ("Taubman" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9,

17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Taubman and The Taubman Realty Group Limited Partnership (the "Taubman OP") will be acquired by Simon Property Group, Inc. ("Simon") through its subsidiaries Simon Property Group, L.P. (the "Simon OP"), Silver Merger Sub 1, LLC ("Merger Sub 1"), and Silver Merger Sub 2, LLC ("Merger Sub 2," and together with Simon, the Simon OP and Merger Sub 1, the "Simon Parties") (the "Proposed Transaction").

2.      On February 10, 2020, Taubman and Simon issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated February 9, 2020 (the "Merger Agreement").  Under the terms of the Merger Agreement, each Taubman stockholder will receive $52.50 per share in cash for each share of Taubman common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $4.7 billion.

3.      On April 28, 2020, Taubman filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Taubman stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, Lazard Frères &

Co. LLC ("Lazard"); and (ii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Taubman's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that is headquartered in, conducts business in, and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable

conduct took place, where most of the documents are electronically stored, and where the evidence exists. Moreover, Taubman is incorporated and headquartered in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

### THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Taubman.

9. Defendant Taubman is a Michigan corporation with its principal executive offices located at 200 East Long Lake Road, Suite 300, Bloomfield Hills, Michigan 48304. Taubman is an S&P MidCap 400 Real Estate Investment Trust ("REIT") engaged in the ownership, management and/or leasing of 26 regional, super-regional and outlet shopping centers in the U.S. and Asia. Taubman's common stock trades on the New York Stock Exchange under the ticker symbol "TCO."

10. Defendant Mayree C. Clark ("Clark") has been a director of the Company since January 2018.

11. Defendant Michael J. Embler ("Embler") has been a director of the Company since January 2018.

12. Defendant Janice L. Fields ("Fields") has been a director of the Company since January 2019.

13.    Defendant Michelle J. Goldberg ("Goldberg") has been a director of the Company since May 2019.

14.    Defendant Nancy Killefer ("Killefer") has been a director of the Company since December 2019.

15.    Defendant Cia Buckley Marakovits ("Marakovits") has been a director of the Company since 2016.

16.    Defendant Robert S. Taubman ("R. Taubman") has served as Chairman of the Board since December 2001, President and Chief Executive Officer ("CEO") of the Company since 1990, and a director of the Company since 1992.

17.    Defendant Ronald W. Tysoe ("Tysoe") has been a director of the Company since 2007.

18.    Defendant Myron E. Ullman, III ("Ullman") serves as Lead Director and has been a director of the Company since December 2016.  Defendant Ullman also previously served as a director from 2003 to 2004.

19.    Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.    Taubman OP owns direct or indirect interests in all of Taubman's real estate properties.

21.     Simon is a Delaware corporation with its principal executive offices located at 225 West Washington Street, Indianapolis, Indiana 46204.  Simon is a REIT engaged in the ownership of premier shopping, dining, entertainment and mixed-use destinations and an S&P 100 company.  It owns and maintains properties across North America, Europe and Asia, and generates billions in annual sales. Simon's common stock trades on the New York Stock Exchange under the ticker symbol "SPG."

22.     Simon OP is a Delaware limited partnership that is a majority-owned subsidiary of Simon, owning all of Simon's real estate properties and other assets.

23.     Merger Sub 1 is a Delaware limited liability company and a wholly owned subsidiary of the Simon OP.

24.     Merger Sub 2 is a Delaware limited liability company and a wholly owned subsidiary of Merger Sub 1.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     Incorporated in 1973, Taubman operates as a self-administered and self-managed real estate investment trust.  Taubman's sole asset is an approximate 70% general partnership interest in the Taubman OP, which owns direct or indirect interests in all of Taubman's real estate properties.  The Company owns, manages, leases, acquires, disposes of, develops, and expands shopping centers and interests

therein.  Taubman's owned portfolio of operating centers as of December 31, 2019 consists of 24 urban and suburban shopping centers operating in 11 U.S. states, Puerto Rico, South Korea, and China.  The Taubman Company LLC (the "Manager") provides certain management and administrative services for Taubman and for Taubman's U.S. properties.

26.     The Company's shopping centers are strategically located in major metropolitan areas, many in communities that are among the most affluent in the U.S. or Asia, including Denver, Detroit, Honolulu, Kansas City, Los Angeles, Miami, Naples, Nashville, New York City, Orlando, Salt Lake City, San Francisco, San Juan, Sarasota, Tampa, Washington, D.C., West Palm Beach, Hanam (South Korea), Xi'an (China), and Zhengzhou (China).  These properties range in size between 238,000 and 1.7 million square feet of gross retail space and between 187,000 and 1.0 million square feet of gross retail space, excluding anchors, with an average of 1.0 million and 0.5 million square feet, respectively.  Taubman centers are among the highest quality centers in the U.S. public regional mall industry as measured by the Company's high portfolio average of mall tenants' sales per square foot.

27.     On February 10, 2020, Taubman announced its fourth quarter ("Q4") and full year 2019 financial results, including the following highlights: total portfolio net operating income ("NOI") growth at the Company's beneficial interest,

excluding lease cancellation income, was up 3.9 percent for the year and up 4.6 percent for Q4; for the full year, comparable center NOI, excluding lease cancellation income was up 0.2 percent, and was up 1.4 percent at the Company's share; Q4 comparable center NOI, excluding lease cancellation income was up 1.7 percent at the Company's share; and industry-leading sales per square foot of $876, up 3.1 percent for the quarter and average rent per square foot up 1.6 percent for the year. Commenting on the Company's results, defendant R. Taubman stated, "We were pleased with our NOI growth in a year where we experienced elevated tenant bankruptcies and unfavorable foreign currency exchange rates. . . . Our high-quality portfolio of assets continues to grow, notwithstanding a volatile retail environment."

28. Thereafter, on March 5, 2020, Taubman declared a regular quarterly dividend of $0.675 per share of common stock, payable March 31, 2020 to stockholders of record on March 16, 2020.

**The Proposed Transaction**

29. On January 28, 2020, Taubman and Simon issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> INDIANAPOLIS and BLOOMFIELD HILLS, Mich., Feb. 10, 2020 -- Simon Property Group, Inc. (NYSE: SPG) ("Simon") and Taubman Centers, Inc. (NYSE: TCO) ("Taubman") today announced that they have entered into a definitive agreement under which Simon will acquire an 80% ownership interest in The Taubman Realty Group Limited Partnership ("TRG"). Simon, through its operating partnership, Simon Property Group, L.P., will acquire all of Taubman common stock for $52.50 per share in cash and the Taubman family

will sell approximately one-third of its ownership interest at the transaction price and remain a 20% partner in TRG.

TRG is engaged in the ownership, management and/or leasing of 26 super-regional shopping centers in the U.S. and Asia.  TRG's ownership includes 24 high-quality retail assets (including 21 in the United States and 3 in Asia), consisting of approximately 25 million feet of gross leasable area, and will continue to be managed by its existing executive team, under the leadership of Taubman Chairman, President and Chief Executive Officer Robert S. Taubman, in partnership with Simon.  The parties have agreed to work together to implement best practices to achieve operational efficiencies and will eliminate Taubman's public company costs immediately following closing.

The transaction has been unanimously recommended by a Special Committee of independent directors of Taubman and approved unanimously by the Boards of Directors of both companies.  Simon expects to fund the total required cash consideration of approximately $3.6 billion with existing liquidity.

Simon Chairman of the Board, Chief Executive Officer and President David Simon stated, "We are very pleased to announce this transaction, which will be immediately accretive to Simon's FFO.  By joining together, we will enhance the ability of TRG to invest in innovative retail environments that create exciting shopping and entertainment experiences for consumers, immersive opportunities for retailers, and substantial new job prospects for local communities.  I look forward to partnering with Bobby and the TRG executive team in this exciting new joint venture."

\*\*\*

Robert S. Taubman, Chairman, President and Chief Executive Officer of Taubman, added, "Since Taubman Centers' founding 70 years ago, we have built a portfolio of high-quality assets and continuously adapted to the evolving retail landscape. I am proud of all that this company's talented employees have achieved and am thrilled to have the opportunity to join together with Simon through this joint venture. Over the last few years, David and I have developed an excellent

personal relationship and importantly, Simon shares our commitment to serving retailers, shoppers and the communities in which we operate. The Board and I are confident that Simon is the ideal partner to help us build on our progress."

**Strategic and Financial Rationale**

- **Simon to acquire an 80% interest in TRG, which owns a highly productive mall portfolio.** The purchase price represents an underwritten capitalization rate of approximately 6.2%.

    \*\*\*

- **Immediate accretion for Simon shareholders.** The transaction is expected to be at least 3% accretive to Simon's Funds From Operations (FFO) per share on an annualized basis, beginning immediately upon consummation of the transaction.

- **Develop innovative retail environments.** The transaction will enhance TRG's ability to invest in innovative retail environments for retailers and consumers, deliver exciting shopping and entertainment experiences to consumers, and create new job prospects for local communities.

**Transaction Details**

Required approvals for the transaction include: (i) two-thirds of the outstanding Taubman voting stock and (ii) a majority of the outstanding Taubman voting stock not held by the Taubman family. The Taubman family, which represents approximately 29% of outstanding Taubman voting stock, has agreed to vote in favor of the transaction. The transaction is also subject to customary closing conditions and is expected to close in mid-2020.

Taubman will be releasing its fourth quarter and full year 2019 earnings this morning in a separate press release.

**Insiders' Interests in the Proposed Transaction**

30.    Taubman insiders are the primary beneficiaries of the Proposed

Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Taubman.

31.     Notably, Taubman insiders stand to reap substantial financial benefits for securing the deal with Simon.  Pursuant to the Merger Agreement, all outstanding options, restricted stock units ("RSUs"), performance-based stock units ("PSUs"), deferred stock units ("DSU"), and dividend equivalent rights ("DERs") will vest and convert into the right to receive cash payments.  The following tables summarize the value of the Company options, RSUs, PSUs, DSUs, and DERs that Company insiders stand to receive:

| Name | TCO RSUs (#) | TCO PSUs (#)(a) | Time-Vesting Taubman Incentive Units (#) | Performance-Vesting Taubman Incentive Units (#)(a) | TCO DERs ($) |
|---|---|---|---|---|---|
| **Robert S. Taubman**<br>    Chief Executive Officer | — | — | — | — | — |
| **Simon J. Leopold**<br>    EVP, Chief Financial Officer & Treasurer | 18,399 | 22,460 | 8,154 | 36,690 | 68,536.13 |
| **William S. Taubman**<br>    Chief Operating Officer | — | — | — | — | — |
| **Paul A. Wright**<br>    President, Taubman Asia | 18,772 | 18,592 | — | — | 113,510.08 |
| **Peter J. Sharp**<br>    President, Taubman Asia | — | — | — | — | — |

| Name | Number of TCO DSUs (#) | Amount Payable at Closing[1] ($) |
|---|---|---|
| Mayree Clark | — | — |
| Michael J. Embler | 7,036 | 369,390 |
| Janice L. Fields | 7,352 | 385,980 |
| Michelle J. Goldberg | 5,245 | 275,363 |
| Nancy Killefer | 4,818 | 252,945 |
| Cia Buckley Marakovits | 15,544 | 816,060 |
| Ronald W. Tysoe | 29,767 | 1,562,768 |
| Myron E. Ullman, III | 20,759 | 1,089,846 |

32.    Moreover, if they are terminated in connection with the Proposed Transaction, Taubman's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following tables:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($) [3] | Tax Reimbursement ($) | Total ($) |
|---|---|---|---|---|---|
| R. Taubman<br>Chief Executive Officer | — | — | — | — | — |
| Simon Leopold<br>EVP, Chief Financial Officer & Treasurer | 3,136,875 | 2,190,372 | 116,916 | — | |
| W. Taubman<br>Chief Operating Officer | — | — | — | — | — |
| Paul A. Wright<br>President, Taubman Asia | 2,026,417 | 2,075,120 | 10,101 | — | |
| Peter J. Sharp<br>President, Taubman Asia[4] | — | — | — | — | — |

| Named Executive Officer | Single Trigger Vesting ($) | | | Double Trigger Vesting ($) | | |
|---|---|---|---|---|---|---|
| | | | | Cash Substitute Awards | | |
| | TCO RSUs[a] | TCO PSUs[a] | TCO DERs[a] | TCO RSUs[b] | TCO PSUs[b] | TCO DERs[b] |
| R. Taubman | — | — | — | — | — | — |
| Mr. Leopold | 423,098 | 634,620 | — | 426,458 | 639,660 | 68,536 |
| W. Taubman | — | — | — | — | — | — |
| Mr. Wright | 306,285 | 301,875 | 69,446 | 679,245 | 674,205 | 44,064 |
| Mr. Sharp | | | — | | | — |

**The Proxy Statement Contains Material Misstatements or Omissions**

33.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Taubman's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

34.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Lazard; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning the Company's Financial Projections and Lazard's Financial Analyses***

35.     The Proxy Statement omits material information regarding Company management's financial projections.

36.     For example, the Proxy Statement sets forth:

On December 20, 2019, the Special Committee held a meeting, which was attended by representatives of Taubman's senior management, Kirkland, Lazard and Goldman. At the meeting, Taubman's senior management reviewed with the Special Committee a set of preliminary financial projections that the Special Committee had instructed management to prepare in the context of evaluating a transaction with Simon, with management noting that such projections remained incomplete pending additional details that management was still preparing. The Special Committee reviewed with management the key

> drivers and rationale behind the preliminary financial projections, including the shifting retail landscape, and views on the achievability of such projections. During an executive session of the Special Committee, the Special Committee concluded that it should receive and review the additional portions of such projections prior to making any final determination with respect to such projections.

Proxy Statement at 26-27. The Proxy Statement fails, however, to disclose the preliminary financial projections, that the Special Committee instructed Taubman management to prepare to evaluate a transaction with Simon, reviewed at the December 20, 2019 Special Committee meeting. The Proxy Statement also fails to disclose the additional portions of these projections that Taubman management was still preparing and fails to quantify the effect the additional portions of the projections had on the Company's projections disclosed in the Proxy Statement and utilized by Lazard for its financial analyses, compared to the preliminary financial projections reviewed at the December 20, 2019 Special Committee meeting.

37. Additionally, with respect to management's key assumptions underlying the financial projections, the Proxy Statement fails to disclose: (i) existing property growth at 2.0% for Tier I assets, 0.0% for Tier II assets, (2.0)% for Tier III assets and 4.0% for Asian assets; (ii) tiered growth rates are before any impact from center-specific development activity; (iii) capex run-rate of ~ $60-70MM in maintenance capex starting in 2021E; (iv) project capex relates to currently identified opportunities and renovations, and includes ~ $105MM related to Anseong development; (v) no dividend growth assumed; (vi) secured mortgage debt

assumed to roll at debt yields of ~ 10-15% depending on property, with interest rates generally assumed at 5.0-5.5%; (vii) corporate debt refinanced at par with same fixed interest rate / spread to LIBOR; (viii) assumed minimum cash balance of $50MM starting in 2020E; Asia balance accrues through free cash flow generation; and (ix) assumes Stamford sold at year end 2020E for 425MM at share, reflecting ~15% cap rate and ~$27MM of X'ian proceeds to be received in Q1 2020.

38.     Moreover, the Proxy Statement fails to disclose the following financial metrics for the Company over the projection period: (i) GAAP comparable NOI; (ii) funds available for distribution; (iii) funds available for distribution per share/unit; (iv) net change in cash pre and post distribution; and (v) all line items underlying the Company's unlevered free cash flow, including (a) straight-line rent adjustments, (b) straight-line of ground leases, (c) share-based compensation; and (d) net proceeds from dispositions, less taxes, less capital expenditures.

39.     The Proxy Statement also omits material information regarding Lazard's financial analyses supporting its fairness opinion.

40.     The Proxy Statement describes Lazard's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Taubman's public stockholders are unable to fully understand these analyses

and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

41.    With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of Taubman's (a) net tangible other assets and liabilities, (b) value of peripheral land, (c) outstanding principal amount of share of consolidated secured debt, (d) outstanding principal amount of other credit facilities and term loans, (e) outstanding principal amount due to the holders of Taubman Series J Preferred Stock and Taubman Series K Preferred Stock, and (f) cash and cash equivalents utilized in the analysis; (ii) the implied (a) perpetuity growth rates, (b) 2023 funds from operation multiple, and (c) EBITDA multiple resulting from the analysis; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 5.50% to 6.75%.

42.    With respect to Lazard's *Comparable Companies Public Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed by Lazard.

43.    With respect to Lazard's *Precedent Transaction Valuation Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each of the transactions analyzed by Lazard; and (ii) the financial multiples and financial metrics for the select additional reference REIT transaction observed by Lazard.

44.     With respect to Lazard's *Analyst Price Targets Analysis*, the Proxy Statement fails to disclose the identity of the analyst, each of the analyst's price targets and the date the price target was set.

45.     With respect to Lazard's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) each of the select precedent U.S. REIT transactions analyzed by Lazard; and (ii) the transaction premium to (a) unaffected price, (b) 1-day VWAP, and (c) 20-day VWAP for each of the transactions.

46.     Without such undisclosed information, Taubman stockholders cannot evaluate for themselves whether the financial analyses performed by Lazard were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Lazard's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

47.     The omission of this material information renders the statements in the "Certain Unaudited Prospective Financial Information," and "Opinion of Financial Advisor to the Special Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

48.    The Proxy Statement omits material information concerning the background process leading to the Proposed Transaction.

49.    For example, the Proxy Statement sets forth that "[o]n January 12, 2020, Lazard provided Ms. Marakovits with preliminary financial analyses relating to [Simon's] January 9 Proposal, to assist Ms. Marakovits in her discussion with Mr. R. Taubman and Mr. Simon scheduled for later that day." *See id.* at 29.  Yet, the Proxy Statement fails to disclose Lazard's preliminary financial analyses relating to Simon's January 9, proposal provided to defendant Marakovits.

50.    The omission of this material information renders the statements in the "Background of the Transactions" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Taubman will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein

# CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Lazard, and the background of the Proposed Transaction.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.    Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

58.    Plaintiff repeats all previous allegations as if set forth in full.

59.    The Individual Defendants acted as controlling persons of Taubman within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Taubman, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Taubman's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Taubman, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Taubman stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable

allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 18, 2020                              **WEISSLAW LLP**


By   /s/ Richard A. Acocelli
        Richard A. Acocelli
        1500 Broadway, 16th Floor
        New York, New York 10036
        Tel: (212) 682-3025
        Fax: (212) 682-3010
        Email: racocelli@weisslawllp.com

        *Attorneys for Plaintiff*